856 F.2d 186
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Clyde CLEMMONS, Plaintiff-Appellant,
v.
Otis R. BOWEN, Secretary, Department of Health and Human
Services, Defendant- Appellee.
 No. 88-2011.
 United States Court of Appeals, Fourth Circuit.
 Argued June 6, 1988.
Decided Aug. 19, 1988.
 
 Timothy Edward Mering (Robert R. Jenkins, Paul R. Schlitz, Jr., Jenkins & Block, P.A. on brief) for appellant.
 Jacquelyn Cusumano, Assistant Regional Counsel (Beverly Dennis, III, Chief Counsel, Charlotte Hardnett, Chief, Social Security Litigation Division, Office of the General Counsel, Department of Health and Human Services, Breckinridge L. Willcox, United States Attorney, Larry D. Adams, Assistant United States Attorney on brief) for appellee.
 Before HARRISON L. WINTER, Chief Judge, JAMES DICKSON PHILLIPS, Circuit Judge, and PAUL V. NIEMEYER, United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Clyde Clemmons appeals from the district court's order affirming denial of disability benefits by the Secretary of Health and Human Services. We affirm.
 
 
 2
 * Clemmons applied for disability benefits on August 8, 1985, alleging disability commencing December 1983, due to a spinal injury in 1966, re-injury in 1980, and related back pain as well as hypertension and chest pain. He last met the earnings requirements on December 21, 1985. His application was denied at all levels, the Appeals Council ultimately affirming the December 6, 1986 post-hearing decision of an administrative law judge (ALJ) which became, therefore, the final decision of the Secretary. Because Clemmons was previously denied an application for disability on February 6, 1981, and because he now alleges disability commencing in December 1983, only disability arising between December 1983 and December 1985 is now relevant.
 
 
 3
 The ALJ found that Clemmons' impairments were severe but not equal to the Listings of Impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1, and that they prohibited his return to his most recent past relevant medium exertional level work as a maintenance supervisor in a large apartment complex. The ALJ then determined that Clemmons retained the residual functional capacity for light and sedentary work. Turning to Vocational rules 202.03 and 201.03, 20 C.F.R., Part 404, Subpart P, Appendix Z, the ALJ determined that someone of Clemmons' advanced age (58 at the time of the hearing) and limited education (8th grade) was not disabled so long as he possessed transferable skills from previous skilled or semi-skilled work experience. The ALJ relied on the testimony of a vocational expert to determine that Clemmons' prior work as a "maintenance supervisor" (from 1976-1980) was of a semi-skilled nature and that Clemmons' possessed transferable skills due to that experience. Specifically, the vocational expert testified: "Some of the transferable skills include to plan and supervise the work of other persons, to deal with the person's short business contacts, to keep and maintain records, [and] to check and control the quality of work performed by other people." The vocational expert also testified and the ALJ found that at the light work levels stationary guard, storekeeper, and sales clerk positions were available to which Clemmons' skills could be transferred. At the sedentary level, "two thousand positions as a dispatcher" were identified. The vocational expert also testified that sedentary level guard, storekeeper, and clerk positions which Clemmons could perform also existed in the national economy.
 
 
 4
 After the Appeals Council adopted the ALJ's decision denying him benefits, Clemmons brought an action in the district court, pursuant to 42 U.S.C. Sec. 405(g), to review the ALJ's decision. Among other things, Clemmons argued that there was not substantial evidence to support the ALJ's "light" work residual functional capacity determination. Clemmons then argued that if he were found capable of performing only sedentary work, Vocational Rules 201.03 and 202.03 and accompanying regulations direct a finding of disabled if someone of his age and limited education is considered only to have previous semi-skilled work experience. Alternatively, Clemmons argued that the skills identified by the vocational expert were only "aptitudes"; or, that if they were skills there was not substantial evidence to support the finding that he had them; or, that if he has those skills, the secretary has not met its burden of showing how these skills specifically transfer to the identified sedentary jobs.
 
 
 5
 The district court, magistrate Chasanow presiding, largely rejected all of these arguments. Although the magistrate "tended to agree" that substantial evidence did not exist in the record in support of the Secretary's determination that Clemmons retained the residual functional capacity for light work, she found that the Secretary's alternative finding that Clemmons has the residual functional capacity for sedentary work was supported by substantial evidence.
 
 
 6
 On appeal, Clemmons has somewhat changed his tune and now argues that the determination that he retains the residual functional capacity for sedentary work is not supported by substantial evidence. Clemmons also repeats his arguments regarding the appropriate interpretation of the pertinent Vocational Rules and regulations; whether there is sufficient evidence that he possesses the identified skills; and whether the Secretary has met its burden of proof of transferability of Clemmons' specific skills to specific jobs available in the national economy.
 
 II
 
 7
 The decision of the Appeals Council, as the final decision of the Secretary, is conclusive if supported by substantial evidence, 42 U.S.C. Sec. 405(g), and all evidentiary conflicts are to be resolved by the Secretary and not the reviewing court. See Richardson v. Perales, 402 U.S. 389 (1971). Because we conclude that substantial evidence in the record supports the ALJ's findings, as adopted by the Appeals Council, that Clemmons retained the residual functional capacity for light work; that he had transferable skills from his previous work; and that jobs he was able to perform despite his impairments were available to him in significant numbers, it is not necessary to decide the issues raised by Clemmons with regard to the proper interpretation of Vocational Rules 201.03, 202.03, and accompanying regulations.
 
 
 8
 * The medical evidence before the ALJ at the hearing substantiates the finding that he has the residual functional capacity to perform light, as well as sedentary, work.
 
 
 9
 Light work is defined as work which "involves lifting no more than 20 pounds at a time with frequent lifting and carrying of objects weighing up to 10 pounds." 20 C.F.R. Sec. 404.1567(b). Light work may also involve little lifting but "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of leg and arm controls." Id. A person found capable of performing light work is generally likewise considered capable of performing sedentary work which involves occasional lifting of "no more than 10 pounds" and is predominantly sedentary with only occasional walking and standing. See 20 C.F.R. Sec. 1567(a).
 
 
 10
 While the evidence of record establishes that Clemmons has suffered from back problems since at least April of 1966, it also shows he worked in medium exertional level employment until 1980 despite this condition and despite the development of high blood pressure. The record also supports the finding that Clemmons' hypertension has not resulted in end organ damage and is controllable through medication. Although his pain and injury purportedly increased upon his re-injury (lumbar strain) while pulling a dumpster on March 20, 1980, the 1981 post-hearing decision of an ALJ found that the combination of Clemmons' back impairments and hypertension did not prevent his performance of basic work activities. He was then found to have the residual functional capacity for light work. That decision was affirmed by the United States District Court for the District of Maryland on March 2, 1984.
 
 
 11
 In the application for disability benefits presently under review, no new injuries are alleged, rather disability is sought on the basis of the degeneration of Clemmons' prior impairments, including pain, to the point that, by December 1983, basic work activities were precluded. The ALJ found that the medical evidence of record does not support this claim and that Clemmons' subjective testimony of totally disabling pain was likewise not supported by the objective medical evidence of record.
 
 
 12
 The pertinent medical evidence of record includes an emergency room report from the Johns Hopkins Hospital dated April 6, 1984. Therein it is noted that Clemmons sought treatment for complaints of exacerbated back pain for which he had reportedly sufficiently treated himself for over a year with Motrin, aspirin, and heating pads. His examination revealed largely normal results with normal reflexes and a normal range of motion despite back pain which at the time Clemmons reported had not increased over the four preceding years until recently. A spinal x-ray revealed no subduration, compression or fracture, and acute exacerbation was doubted. Clemmons was referred back to his normal treating physicians.
 
 
 13
 On October 12, 1984, Dr. Ronald Cohen reported an examination of Clemmons indicating no "appreciable weakness of the extensor hallucis longus on either side" and no focal sensory deficit. Dr. Cohen also noted back pain dating back to Cohen's 1967 disc surgery. Dr. Cohen diagnosed left lumbar radiculopathy and a laminectomy defect and recommended myelography in order to determine the proper course of treatment. Clemmons, however, declined to undergo this procedure.
 
 
 14
 Clemmons was seen again on April 1, 1985, by Dr. Eli Lippman, the orthopedic surgeon who treated Clemmons in 1966 and in 1980. Dr. Lippman's brief report noted lumbar spine flexion and extension limitations at 5 degrees and lateral bending limitations at 10-15 degrees. Sensory diminution was also noted and straight leg tests were positive, bilaterally. Clemmons' reflexes, however, were noted as being intact. A forty percent permanent disability of the lumbar spine was diagnosed.
 
 
 15
 Alfred Wiedman, also an orthopedic surgeon, saw Clemmons on September 19, 1985. Dr. Wiedman observed that Clemmons showed "excellent back movements" while undressing, walking about the room, standing and bending his knees and hips. Dr. Wiedman found no weakness in Clemmons' toe extensors and his plantor flexors were normal and excellent muscle tone of the back and lower extremities was noted. A slight difference in left and right calf sizes was not reported to be significant. X-rays revealed normal vertebral alignment on the lateral view with only "mild narrowing between L-5 and S-1." Only slight lateral shifts of L-4 and L-5 as well as slight scoliosis were observed on the AP view. Dr. Wiedman considered Clemmons to be capable of normal functioning for a person of his age and in generally good physical health.
 
 
 16
 On November 5, 1985, Dr. Anil Uberoi, an internist, examined Clemmons. Upon examination, Clemmons was able to perform all requested movements of the lumbrosacral area despite reported associated pain. Dr. Uberoi concluded that the use of anti-inflammatory agents might relieve some of Clemmons' pain symptoms. Unlike Dr. Wiedman, Dr. Uberoi thought Clemmons' back pain might limit his ability to do work involving lifting and bending. This conflict was properly resolved by the ALJ and may not be disturbed by this court. Both Dr. Wiedman's and Dr. Uberoi's observations of Clemmons and their objective medical findings as noted above substantially support the ALJ's resolution of this conflict. Other evidence in support of the ALJ's determination include x-rays of the lumbar vertebrae taken November 20, 1985, showing normal results, and results of an examination performed December 13, 1985, by a Dr. Plott who found that Clemmons had "no cardiac contraindications to light work" and an "unremarkable" physical examination. Dr. Plott also noted that Clemmons' hypertension was under control.
 
 
 17
 We find that the evidence of record substantiates the Secretary's finding that Clemmons retained the residual functional capacity to perform light, and therefore sedentary, work during the relevant time period and that Clemmons' subjective complaints of pain were not supported by objective medical evidence to the degree alleged. See 20 C.F.R. Sec. 404.1529.
 
 B
 
 18
 Clemmons' remaining challenges to the Secretary's decision merit little discussion. As previously discussed, a vocational expert testified at the hearing as to several specific skills acquired by Clemmons through his past employment. This testimony is supported by Clemmons' own descriptions of his past work. The vocational expert also identified several jobs to which these skills could be transferred and for which Clemmons is suited that exist in significant numbers in the area where Clemmons lives. The vocational expert's testimony, supported as it is by the record, was sufficient to support a finding of transferable skills, see Ingle v. Heckler, 763 F.2d 169, 170 (4th Cir.1985), and likewise substantially supports the Secretary's finding of alternative available employment. We therefore affirm the district court's order upholding the Secretary's denial of Clemmons' application for disability benefits.
 
 
 19
 AFFIRMED.